Filed 7/23/13  Padilla v. Pulmuone Wildwood, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA PADILLA, | |
| Plaintiff and Appellant, | G045475 |
| v. | (Super. Ct. No. 30-2010-00335122) |
| PULMUONE WILDWOOD, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment and orders of the Superior Court of Orange County, Gregory Munoz, Judge.  Affirmed.

Rastegar & Matern, Matthew J. Matern, Dalia Khalili and Paul J. Weiner, for Plaintiff and Appellant.

Gordon & Rees, Christopher B. Cato, Matthew G. Kleiner and Susanna R. Matingou, for Defendants and Respondents.

## INTRODUCTION

Appellant Maria Padilla sued her supervisor, Dong Min Kim, for sexually harassing her at work; she sued their mutual employer, Pulmuone Wildwood, Inc., for failing to prevent or correct the harassment.[1]    After a six-day trial, the jury returned a defense verdict.  Padilla appeals on the grounds the trial court improperly granted several motions in limine and overruled her objections to two statements made during the defense's closing argument.  She also appeals from an order denying her motion for new trial.

We affirm.  The trial court properly exercised its discretion to rein in a trial that was threatening to expand into areas that were either marginally relevant or totally irrelevant to the core issues of sexual harassment and failure to prevent or correct.  Defense counsel's remarks during closing argument of which Padilla complains were in one case entirely proper and in the other not prejudicial.  Finally, Padilla abandoned the issue of the new trial motion by failing to present argument and authority about it.

## FACTS

Padilla operates a machine at the Pulmuone factory in Fullerton, a plant that packages tofu.  She began her current job there in 2002 or 2003.  Kim joined Pulmuone in 1996; he became a production manager and Padilla's supervisor in 2006.  Padilla is of Mexican origin; Kim is Korean.

In 2007, Padilla accused Kim of sexually harassing her.  She complained to Pulmuone's human resources manager on November 21, 2007.  She filed a complaint with the Department of Fair Employment and Housing on January 23, 2008.[2]  In her DFEH complaint, Padilla alleged both national origin and sexual harassment.  The

---

[1]    Padilla also named Pulmuone USA, Inc., as a defendant, but this party was dismissed on a motion for judgment on the pleadings.

[2]    After much rooting around, we were able to find a copy of the DFEH complaint, tucked away as part of an exhibit to the opposition to a discovery motion.  Neither appellant nor respondents aided us by citations to the record in our search for this important document.

2

complaint states, "From on or about January 2007 to November 20, 2007 I was harassed. From on or about March 2007 to November 20, 2007 I was sexually harassed . . . ."[3] The second page of the form showed the box for race (raza), but not sex (sexo) checked in response to an inquiry about the types of discrimination complained of and a line below filled out for sexual harassment (acosado sexual).

Although Padilla apparently reported both racial and sexual harassment to the DFEH, she sued only for sexual harassment.[4] She named Kim and two Pulmuone entities as defendants.

The lawsuit was tried to a jury over six days in February 2011. The case followed a "he-said, she-said" pattern, with Padilla accusing Kim of pestering her to have sex with him, as well as touching her and making lewd remarks and ethnic slurs, and Kim denying he had ever done the things of which he was accused.

The jury returned a special verdict, in which it found that Kim subjected Padilla to severe and pervasive harassing conduct because she was a woman and to a hostile and abusive work environment that harmed her. The harassing conduct, however, was not a "substantial factor in causing harm" to Padilla. With respect to the employer, the jury found that, although Padilla was subjected to unwanted harassing conduct because she was a woman, Pulmuone did not fail to take reasonable steps to prevent the harassment. Judgment was entered for defendants.

Padilla moved for a new trial, a motion the trial court denied. The issues Padilla has identified on appeal are the denial of her new trial motion, the trial court's rulings on three pre-trial motions in limine, and the overruling of objections Padilla's counsel made to respondents' counsel's statements during closing argument.

---

3  The form, which was evidently filled out by someone other than Padilla, asserts that the individual who harassed her was "Don King."

4  The record does not contain a copy of Padilla's right-to-sue letter.

## DISCUSSION

### I.        Analytical Framework for Review

We review a trial court's rulings on matters of admissibility of evidence for abuse of discretion, that is, whether the court's determination was "arbitrary, capricious, or patently absurd." (See *Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1481.)   And it is not enough to show error; the party claiming error must also show that the ruling prejudiced it by causing a miscarriage of justice. (*Travelers Casualty & Surety Co. v. Employers Ins. of Wausau* (2005) 130 Cal.App.4th 99, 117; see also Evid. Code, § 354.)

In this case, because she was suing under the California Fair Employment and Housing Act (Gov. Code, §§ 12900 et seq.)[5], Padilla faced a limitation on what she could plead in court.  She was required to exhaust her administrative remedies with the DFEH before she could sue Kim or Pulmuone.  She had to file a complaint with the department identifying the FEHA violations they had committed. (See § 12960, subd. (b).)  If the department chose not to bring a civil action based on her claims, she would then receive a right-to-sue letter. (See § 12965, subd. (b).)  Only then could she file suit in superior court, and only for the violations specified in her complaint to the department. (See *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1729-1730 [plaintiff failed to exhaust administrative remedies for sex discrimination and retaliation; DFEH complaint alleged only age discrimination].)

Padilla's right-to-sue letter is not part of the record on appeal.  From her DFEH complaint, however, it appears she did not complain of any retaliatory acts on the part of Kim or Pulmuone resulting from her report of sexual and national origin harassment to Pulmuone.  Instead, she told the DFEH the harassment ceased as of November 20, 2007, the day before she complained to her employer.  We must assume,

---

[5]        All further statutory references are to the Government Code unless otherwise indicated.

therefore, that Padilla did not receive permission from the DFEH to sue for retaliation. And, although she could have received permission to sue for national origin discrimination, having reported it to the DFEH, her complaint did not state a cause of action for this kind of discrimination.

### A.         Motion in Limine #1 – Retaliation and Failure to Respond

In this motion, respondents sought to prevent Padilla from introducing (1) a document evidencing an allegation by a male employee that Kim retaliated against him for complaining about Kim; (2) evidence from another employee about a dispute with Kim over a time card, and (3) testimony about verbal complaints by employees against Kim and Pulmuone's failure to respond to them. Respondents argued this evidence was "character trait" evidence and inadmissible under Evidence Code section 1101, subdivision (a), to prove conduct.

Padilla responded that the evidence was relevant because (1) it showed that Pulmuone did not investigate Padilla's sexual harassment complaint against Kim, but rather allowed Kim to act as he pleased; (2) it showed Kim to be a bad-tempered supervisor who yelled at people, making them cry, and who used racial epithets; (3) it explained why Padilla waited so long to report Kim's conduct; and (4) it supported an award of punitive damages against Pulmuone based on Kim's behavior. In addition, Padilla argued that "me too" evidence was admissible, citing *Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740 (*Johnson*).

The trial court granted the motion excluding the evidence on two grounds. First, "retaliatory conduct if it existed as it pertains to other employees besides the plaintiff is not relevant." Second, it felt the potential for confusion and time wasting substantially outweighed the probative value, necessitating exclusion under Evidence Code section 352.

On appeal, Padilla argues that so-called "me too" evidence is admissible, so long as it is not introduced to show propensity, but rather some other material fact, such

as intent or motive. But the evidence respondents were seeking to exclude was not "me too" evidence; it was not evidence of other female employees whom Kim had sexually harassed. (Cf. *Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 97-98 [testimony from other women that defendant sexually harassed them]; *Johnson, supra*, 173 Cal.App.4th at pp. 761-762 [testimony in pregnancy discrimination action from women who had been fired after becoming pregnant].) It was also not evidence that, if believed, would demonstrate a discriminatory motive or intent behind Kim's harassing actions. (See *Pantoja v. Anton, supra,* 198 Cal.App.4th at p. 115.)[6] What the court excluded was evidence of "retaliatory conduct," not evidence of sexual harassment of other women. And respondents did not move to exclude evidence of sexual harassment of other women, but rather evidence of retaliation against one specific *male* employee for complaining about Kim.

Padilla's complaint stated one cause of action, for sexual harassment. (See § 129940, subd. (j)(1).) So far as we can tell, she did not complain to the DFEH about retaliation, which is a separate FEHA violation. (§ 12940, subd. (h).)[7] It does not appear that she ever sought to amend her submission to the DFEH to include a charge of retaliation. She could not sue Kim or Pulmuone for retaliation, and we do not see that evidence of retaliation was material to anything at issue.

Padilla also argued that the evidence was relevant to show why she did not immediately take advantage of Pulmuone's process for reporting and dealing with sexual harassments: she was aware of other complaints against Kim about which the company had done nothing. But the evidence respondents sought to exclude was not ignored complaints of sexual harassment or, apparently, any kind of FEHA harassment. From the

---

6      If Kim had testified that he was a sweetheart of a boss who was universally beloved by his subordinates, Padilla could have asked the trial court to revisit the ruling on the motion in limine in order to impeach Kim. (See *Pantoja v. Anton, supra*, 198 Cal.App.4th at p. 118.) Kim never made any such claims at trial, however.

7      Retaliation, by definition, would have to occur *after* Padilla had reported the initial FEHA violation. Moreover, an employee must present evidence of an adverse employment action and a link between the protected activity and the adverse action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) Padilla did not testify about any adverse employment action resulting from her reporting Kim for sexual harassment.

6

brief description given in the motion in limine, it was merely instances of ordinary workplace squabbles. The trial court had the discretion to conclude this argument was also irrelevant; the company's doing nothing about a complaint is quite different from Kim's taking revenge on other people who had reported him to his superiors.

What's more, the jury found in favor of Padilla on the issue of whether harassment occurred. The jury believed Padilla's claim that she had been harassed by Kim because she was a woman. It believed the harassment had been severe. What it did not believe is that the harassment was a substantial factor in causing her harm. Padilla does not explain how the excluded evidence – Kim had been mean to other employees and Pulmuone let him get away with it – could have affected the jury's decision that Padilla herself did not suffer substantial harm as a result of the sexual harassment she described. So her failure to report it right away was not an issue that had any bearing on the ultimate outcome of the case. (See Evid. Code, § 354 [requirement of miscarriage of justice for reversal on the ground of evidentiary error].) Even if the court's ruling had been incorrect, it would not be the basis for a reversal.

### B.            Motion in Limine # 2 – Racial Epithets

Respondents sought to exclude evidence Kim made denigrating remarks about Mexicans. The court granted the motion as to remarks made to other Pulmuone employees, but allowed Padilla to testify that Kim had used ethnic slurs about Mexicans to her. Once again, Padilla argues that this is relevant "me too" evidence.

Padilla did not plead a cause of action for discrimination based on national origin. (§ 12940, subd. (a).) The special verdict had no questions about a hostile work environment owing to national origin discrimination. Thus whether Kim harbored an intent to discriminate against Mexicans is irrelevant. The trial court allowed Padilla to testify he made these remarks to her, as they would arguably influence the overall environment in which she worked. (Cf. *Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 36-37 [racial slur coupled with other harassing conduct may create

7

hostile environment].) But allowing testimony about ethnic slurs in general when no cause of action was based on national origin would simply contribute to a picture of Kim as a bad person, without reference to whether he sexually harassed Padilla. The trial court did not abuse its discretion by limiting the testimony about ethnic slurs to ones directed at Padilla personally.

### C. Motion in Limine #3 – Anger and Yelling

Respondents moved to exclude evidence of Kim's conduct toward other employees who were not members of a protected class. Evidently, Padilla contemplated introducing testimony that Kim yelled at employees in a sort of general way, without reference to gender or national origin. In her opposition to this motion, Padilla did not make an offer of proof as to any specific episodes of non-discriminatory yelling she wanted to introduce. She argued, among other things, that the evidence was relevant to prove Pulmuone's acquiescence in Kim's behavior.

Once again, the trial court did not act arbitrarily, capriciously, or absurdly when it excluded this testimony. In addition to being evidence of character, evidence that Kim was an unpleasant person who raised his voice to subordinates was likely to distract the jury from the main issues: Did Kim sexually harass Padilla and did Pulmuone act properly after receiving Padilla's complaint about him? Whether Pulmuone looked the other way while Kim was treating employees badly – but not illegally – is likewise only marginally relevant to what Pulmuone did when confronted with Padilla's complaint alleging a violation of the law. The court could properly exclude evidence of incidents not amounting to illegal discrimination. As courts have repeatedly observed, the FEHA is not a "civility code." (See *Lyle v. Warner Brothers Television Production* (2006) 38 Cal.4th 264, 295.) It is not designed to make people treat each other nicely, but rather to rid the workplace of disparate treatment based on certain personal characteristics. (*Id.* at p. 280.)

8

The trial court's rulings on these motions in limine "served to narrow the case to the extent possible to what happened" between Padilla and Kim. (See *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 411.) There was no abuse of discretion.

**II.        Statements during Closing Argument**

Padilla's issue with respect to opposing counsel's statements during closing argument is closely tied to the motions in limine. There were two allegedly objectionable statements, which we address after setting out the rules applicable to closing argument.

"In conducting closing argument, attorneys for both sides have wide latitude to discuss the case. '"""The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows and as to the conclusions to be fairly drawn therefrom. . . .""" [Citations.] . . . . "An attorney is permitted to argue all reasonable inferences from the evidence, . . ." [Citation.] "Only the most persuasive reasons justify handcuffing attorneys in the exercise of their advocacy within the bounds of propriety." [Citation.]' [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795 (*Cassim*).) On the other hand, attorneys commit misconduct during closing argument if they assume facts not in evidence, invite the jury to speculate, make derogatory remarks about opposing counsel, or appeal to the jury's self-interest or to its personal passions and prejudices. (*Id.* at p. 796.)

Attorney misconduct does not become reversible error unless it results in prejudice, that is a "'miscarriage of justice,'" which the court determines "'"after an examination of the entire cause, including the evidence."'" A miscarriage of justice occurs when it is "'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Cassim, supra,* 33 Cal.4th at p. 800, quoting *People v. Watson* (1956) 46 Cal.2d 818.)

**A.** **Argument of Absence of Other Examples of Sexual Harassment**

The first statement Padilla complains of dealt with the absence of evidence of other women who were sexually harassed:

"[Defense counsel]: If Mr. Kim is this type of person, that type of person who would ask her to meet outside for sex, all of a sudden the racist – you heard all the racist comments, too? Wouldn't you expect him to do that with at least a few other women? You saw the list of all the people. He supervises a lot of women.

"[Plaintiff's counsel]: Objection, Your Honor.

"The Court: Overruled.

"[Defense counsel]: They ask us why aren't there other employees saying [they are] friends. Why aren't there any employees saying he harassed them, he did the same things, because there aren't any. Manisha Patel [Pulmuone's human resources manager] told you there is no other complaint of sexual harassment.

"[Plaintiff's counsel]: Your Honor, I'd like to request a side bar.

"The Court: Not at this time."

Later, outside the presence of the jury, Padilla's counsel elaborated on the basis of her objection and requested a curative instruction to the jury, which request the court denied. Padilla now argues that counsel's remarks violated the ruling on the defense's first motion in limine. Essentially, she complains the court excluded evidence and then allowed opposing counsel to comment on its absence. But she misapprehends the court's ruling.

The trial court never ruled Padilla could not introduce evidence by other women that Kim had sexually harassed them. The ruling on the first motion in limine was limited to instances of Kim's retaliation against and hostility toward other employees in contexts other than sexual harassment, which were irrelevant and potentially prejudicial because Padilla had not sued for retaliation. Nothing about that ruling kept Padilla from showing sexual harassment directed toward other women, so Respondents'

counsel did not violate a motion in limine by referring to the lack of any evidence of other examples of harassment of women perpetrated by Kim.

### B. Pre-March 2007 Harassment

The other objection grew out of another defense motion in limine. Respondents asked the court to exclude evidence of harassment occurring before March 2007, on the theory that Padilla could not recover for sexual harassment occurring before the starting date alleged in her DFEH complaint. Respondents also moved to exclude evidence of harassment occurring after November 2007, again because that was the ending date specified in Padilla's DFEH complaint.

After discussing those motions, Counsel stipulated on the record that there would be no evidence regarding harassing conduct before March 2007, even though Padilla had given other, earlier dates as to when the harassment began at various times during the litigation. The exclusion would be reciprocal; Padilla would not testify about harassment occurring before March 2007, and respondents would not bring up the earlier dates she had identified to impeach her. With respect to evidence of harassment occurring after November 2007, the trial court denied the motion to exclude this evidence.

During closing argument, defendants' counsel stated:

"[Defense counsel]: Mr. Kim is dedicated to his job. He cares. Is he going to jeopardize that by doing something his superiors told him not to? Of course not. Now, let's look at what Ms. Padilla said. Does that make sense? Are her actions consistent with the things she said? No, they are not consistent. Let's look at the things she said. She says all of a sudden April May 2007 Mr. Kim is harassing her. Not just a little harassment. I mean right away, 'Let's meet outside to have sex in the car.' Never mind the fact that she can't leave her position, asking her almost every day, 'Let's meet outside to have sex in the car. If not then, after work.' When everyone is walking out of the place? It wasn't just that. You saw a whole laundry list. Immediately he starts to go,

11

'Where?  Where?'  All of a sudden that happened?  I mean they worked together seven years.  All of a sudden he starts doing that?  That doesn't make sense.

"[Plaintiff's counsel]:  Objection.  Violates motion in limine.

"The Court:  Overruled.  You may continue."

We agree this argument was improper.  The parties stipulated that Padilla would not present evidence of harassment occurring before March 2007 and respondents would not use her deposition testimony regarding earlier dates to impeach her.  Although the stipulation did not explicitly cover the subject of defense counsel's closing argument, it is clearly unfair to preclude Padilla from testifying about acts of harassment occurring before March 2007 and then argue to the jury, "Look, she didn't testify about acts of harassment occurring before March 2007."

But unfair is not the same as prejudicial.  In order for attorney misconduct to warrant reversal, it must appear from the entire record that the other side would have received a more favorable verdict in the absence of the misconduct.  (*Cassim, supra*, 33 Cal.4th at p. 802.)  In this case, the thrust of defense counsel's argument was that the harassment could not possibly have occurred as Padilla claimed.  But the jury *believed* Kim had harassed Padilla.  They also believed the harassment had been severe.  On the point to which the improper argument was addressed, Padilla prevailed.

Obviously the jury did not buy counsel's argument that Padilla's story of harassment was improbable because there were no earlier reports.  There was therefore no prejudice to Padilla's case.

III.       **Denial of Motion for New Trial**

The portion of Padilla's opening brief dealing with her motion for a new trial consists of a single paragraph, quite devoid of legal authority, stating that the court should have granted a new trial because the evidence that was the subject of the first motion in limine was improperly excluded and because her objections to the statements made by defense counsel during closing argument were overruled.  Padilla's reply brief

12

dismisses this issue in a single sentence, again without argument or citation to legal authority. Because she provided no legal argument or authority regarding this issue – and because it appears to be based upon rulings we have already discussed and shown to lack prejudice – we deem it abandoned. (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699.)

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.



BEDSWORTH, ACTING P. J.

WE CONCUR:



ARONSON, J.



FYBEL, J.